UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PAUL ALAN GILMORE,

                    Petitioner,

        v.

RON HAYNES,

                    Respondent.

CASE NO. 3:18-cv-05496-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: November 16, 2018

The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner Paul Alan Gilmore, proceeding *pro se* and *in forma pauperis*, filed his federal habeas Petition pursuant to 28 U.S.C. § 2254, seeking relief from his incarceration pursuant to several state court convictions. Dkts. 4, 4-1.

Petitioner argues his conviction on four counts of viewing depictions of minors engaged in sexually explicit conduct was improper because he received ineffective assistance of counsel at trial (Ground 1), the trial court admitted improper lay opinion testimony (Ground 2), and the state produced insufficient evidence for conviction (Ground 3). However, for the reasons stated herein, the Court concludes the state court adjudication of all the three grounds raised in his

1  Petition was not contrary to, or an unreasonable application of, clearly established federal law.

2  Therefore, the Court recommends denying Petitioner's Petition as to all grounds.

3                                   BACKGROUND

4  **I.    Factual Background**

5        Petitioner was convicted of one count of child molestation in the first degree, one count

6  of communication with a minor for immoral purposes, and four counts of viewing depictions of a

7  minor engaged in sexually explicit conduct in the first degree. Dkt. 8, Ex. 1. He was sentenced to

8  198 months imprisonment. *Id.* Here, Petitioner only challenges his convictions for viewing

9  depictions of minors engaged in sexually explicit conduct (Counts 3, 4, 5, and 6). Dkt. 4. The

10  Washington Court of Appeals stated the facts of the case on direct appeal:

11        Gilmore worked in the Navy as a machinist. He married Candice [footnote omitted]
12        in 2009. They lived in Bremerton with their children MB and CG. MB was
         Candice's daughter from a previous relationship and was born in July 2006.
13        Although Gilmore was not MB's biological father, he had known her since she was
         a baby and she thought of him as her father.

14        *MB's Description of Abuse*

15        In October 2014, Candice's mother Kathleen became concerned because MB had
         suggested to Candice's father that she had a secret she wanted to share. MB was
16        eight years old at the time. Kathleen drove from Oregon to visit MB, and on that
         visit MB told her, "My daddy has me touch him when he's naked and we share a
17        computer -- Daddy's little girl and something about a [sex act]."

18        The next day Kathleen told Candice what MB had said. When MB arrived home
         from school, Kathleen asked MB to show Candice what she had been talking about
19        the night before. MB took Gilmore's laptop computer, opened it, typed in the
         password, opened the web browser, and started typing into the search bar. MB
20        typed "D" and "A" and the search engine automatically generated a result -- a video
         with "Daddy's" in the title. The still image showed a naked, young-looking girl.
21        Candice shut the computer and did not click on the video. Kathleen later reported
         to the police what MB had said.
22
         On November 19, child forensic interviewer Alexandra Mangahas interviewed MB.
23        During the interview MB told Mangahas that Gilmore had done a web search for
         "daddy's little girl" performing a sex act and then showed her the resulting pictures
24

and videos. MB said that the pictures and videos showed grown-ups and children who were not wearing clothing.

MB described what she saw on Gilmore's computer. MB saw videos of "[m]oms, dads, and children" with "privates going into bodies." She said she saw privates go into grown-ups' and kids' mouths. She indicated that privates also went into the place where you go pee. She said that Gilmore told her to keep it a secret or else he and her mom would be divorced.

MB also wrote down what Gilmore did to her. She wrote "he does putting his finger on my private part." She said that Gilmore "sometimes strips me" and that it felt "weird" when he put his finger on her private part. MB also said that Gilmore touched her private part with his private part sometimes and that felt weirder.

*Law Enforcement Investigation*

Detectives Aaron Baker and Lori Blankenship questioned Gilmore. Before asking any questions, Baker read Gilmore his *Miranda* [footnote omitted] rights. Gilmore acknowledged that he understood his rights and he waived them. During the interview Baker asked Gilmore if he had looked up a website with a title referring to "daddy's little girl" performing a sex act. Gilmore said "possibly" then said "probably." He denied ever showing MB something on his computer involving sex acts between an adult and a child.

Baker obtained a search warrant and seized Gilmore's computer. He delivered the computer to Detective Jason Keays at the Washington State Patrol High Tech Crime Unit. Keays searched Gilmore's hard drive using search terms having to do with family sexual abuse, and generated reports listing websites that had been accessed on the computer that included those terms.

Baker then received back the computer along with the reports Keays had generated. There were thousands of entries listed in the reports. Baker searched some of the websites, including several websites involving incest and sexual relations between fathers and daughters. Baker printed several photographs taken from the websites involving minors engaged in sexually explicit conduct.

*Criminal Charges*

The State charged Gilmore with one count of first degree child molestation, one count of communication with a minor for immoral purposes, and four counts of first degree viewing depictions of a minor engaged in sexually explicit conduct.

*Pretrial Proceedings*

The trial court held a child hearsay hearing pursuant to RCW 9A.44.120 to address the admissibility of MB's statements to Candice, Kathleen, and Mangahas. The trial

1
2
3

court ruled that the hearsay statements were admissible. The trial court also held a CrR 3.5 hearing to determine whether Gilmore's interview with Baker and Blankenship was admissible, and it ruled that the interview and Gilmore's statements were admissible.

4
5
6

The State filed a motion in limine requesting that the trial court prohibit Gilmore from wearing his Navy uniform during the trial. During discussion of the motions in limine, Gilmore's defense attorney did not object to the State's request or provide any legal argument that Gilmore had a right to wear his uniform. But defense counsel did state that Gilmore would prefer to wear the uniform. The trial court ruled that Gilmore could not wear his uniform.

7

*Trial Testimony*

8
9
10
11

At trial, Kathleen testified about what MB told her. Candice testified about what MB showed her on the computer. Candice testified that she did not know what to do at first after talking to Gilmore about what MB had shown her. She said she felt she was "between a rock and a hard place" because she wanted to give Gilmore "the benefit of the doubt, while still trying to believe [MB]." But Candice stated that after she realized what was going on, she has "not stopped supporting [MB] since."

12
13

Mangahas testified at trial. The State also admitted and showed the jury the video tape of MB's interview with Mangahas.

14
15
16
17

MB also testified. MB testified about how she used Gilmore's computer to search for "daddy's little girl" performing a sex act and showed it to her mother. She testified that Gilmore had shown her the website. She said that the website had pictures and videos of adults and children who were not wearing any clothing. She could see their private parts. She said she saw private parts "[g]oing in each other" in the pictures and videos. On one occasion she went into Gilmore's room and saw him looking at the pictures on the website.

18

In addition, MB testified that Gilmore had touched her private part with his finger at least once.

19
20
21
22
23
24

Baker testified and the State admitted and showed to the jury the video tape of Gilmore's interview with Baker and Blankenship. Keays and Baker also testified about the websites that had been searched on Gilmore's computer. Keays acknowledged that he did not locate any photographs or videos of child pornography that were actually on Gilmore's computer. Baker discussed the photographs he had taken of the website images and testified that he believed the children depicted in those photographs were under age 16. One of the photos showed a girl who appeared to him to be under the age of 10.

REPORT AND RECOMMENDATION - 4

*Conviction and Sentence*

The jury convicted Gilmore of one count of first degree child molestation, one count of communicating with a minor for immoral purposes, and four counts of viewing depictions of minors engaged in sexually explicit conduct. The jury also found by special verdict that Gilmore and MB were members of the same family or household for the child molestation charge and the communicating with a minor charge and that Gilmore abused a position of trust for the child molestation charge. The trial court sentenced Gilmore to 198 months. Before imposing [legal financial obligations ("LFOs")], the trial court asked the State if it had anything to present on Gilmore's ability to pay. The State said, "the defendant did say in the PSI that when he gets released he will be working, so he anticipates being able to pay the legal financial obligations." RP (June 5, 2015) at 8. The trial court imposed a discretionary LFO of $1,135 for court-appointed attorney fees.

Dkt. 8, Ex. 2 at pp. 2-6; *State v. Gilmore*, 196 Wash. App. 1062, 2016 WL 6707588, at *1-*3 (2016) (citations to record omitted).

## II.    Procedural History

Petitioner filed an appeal with the Washington Court of Appeals, arguing in pertinent part: (1) the state presented insufficient evidence for conviction; and (2) he received ineffective assistance of counsel at trial because trial counsel failed to object to improper lay opinion testimony produced by Detective Aaron Baker. Dkt. 8, Ex. 3. The Washington Court of Appeals affirmed his conviction and sentence. *Id*., Ex. 2.

Petitioner then filed a Motion for Discretionary Review with the Washington Supreme Court. Dkt. 8, Ex. 10. In that Motion, he raised the same issues he raises in this Petition, namely: (1) he received ineffective assistance of counsel because trial counsel failed to object to improper lay opinion testimony; (2) the trial court erred in admitting improper lay opinion testimony; and (3) the state produced insufficient evidence to support his convictions. *Id*. The Washington Supreme Court summarily denied review. *Id*., Ex. 11. The Washington Court of Appeals then entered its mandate, stating the decision in Petitioner's case became final on May 3, 2017. *Id*., Ex. 12. Petitioner subsequently filed this Petition on June 19, 2018. Dkt. 1.

1    Respondent concedes Petitioner has fully exhausted his state court remedies as to all

2    three of his federal claims. Dkt. 7, p. 6.

3    <u>STANDARD OF REVIEW</u>

4    Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis

5    of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision

6    that was contrary to, or involved an unreasonable application of, clearly established federal law, as

7    determined by the Supreme Court of the United States." In interpreting this portion of the federal

8    habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established

9    Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that

10   reached by the Supreme Court on a question of law, or (2) confronts facts "materially

11   indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result.

12   *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

13   Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because

14   that court concludes in its independent judgment that the relevant state-court decision applied

15   clearly established federal law erroneously or incorrectly. Rather, that application must also be

16   unreasonable." *Id.* at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable

17   application of Supreme Court precedent occurs "if the state court identifies the correct governing

18   legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state

19   prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an

20   unreasonable application of Supreme Court precedent "'if the state court either unreasonably

21   extends a legal principle from [Supreme Court] precedent to a new context where it should not

22   apply or unreasonably refuses to extend that principle to a new context where it should apply.'"

23   *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (*quoting Williams*, 529 U.S. at 407).

24

1    The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas courts
2    to presume the correctness of state courts' factual findings unless applicants rebut this presumption
3    with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court
4    decisions under §2254(d)(1) is "limited to the record that was before the state court that
5    adjudicated the claim on the merits." *Cullen*, 131 S.Ct. at 1398.

6                                    EVIDENTIARY HEARING

7    The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro*
8    *v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing
9    could enable an applicant to prove the petition's factual allegations, which, if true, would entitle
10   the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under
11   28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen*,
12   563 U.S. at 180. A hearing is not required if the allegations would not entitle Petitioner to relief
13   under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's
14   factual allegations or otherwise precludes habeas relief, a district court is not required to hold an
15   evidentiary hearing." *Id.*; *see Cullen*, 563 U.S. at 186. The Court finds it is not necessary to hold an
16   evidentiary hearing in this case because Petitioner's claims may be resolved on the existing state
17   court record.

18                                       DISCUSSION

19   **I.      Ineffective Assistance of Counsel (Ground 1)**

20   Petitioner argues he received ineffective assistance of counsel because his trial counsel
21   failed to object to allegedly improper lay opinion testimony. Petitioner challenges the admission of
22   a lay opinion from Detective Baker "as to his determination of the ages of the females depicted in
23   the photographs presented as evidence to support [the charges against Petitioner]." Dkt. 4-1, p. 5.

24

1    In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court created a two-part

2 test for determining whether a defendant received ineffective assistance of counsel. First, a

3 defendant must demonstrate his attorney's performance was deficient, which requires showing

4 "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by

5 the Sixth Amendment." *Id.* at 687. Second, a defendant must demonstrate the deficient

6 performance prejudiced the defense to such a degree the results of the trial cannot be trusted. *Id.*

7    The reasonableness of an attorney's performance is to be evaluated from counsel's

8 perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The

9 petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that

10 counsel's conduct falls within the wide range of professional assistance; that is, the defendant must

11 overcome the presumption that, under the circumstances, the challenged action might be

12 considered sound trial strategy." *Id.* at 689 (citation omitted). Further, a petitioner must establish

13 there is a reasonable probability the results would have been different but for counsel's deficient

14 performance. *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986); *Strickland,* 466 U.S. at 696. "A

15 reasonable probability is a probability sufficient to undermine confidence in the outcome."

16 *Strickland*, 466 U.S. at 694.

17    In its opinion affirming Petitioner's conviction, the Washington Court of Appeals stated:

18    Gilmore argues that defense counsel was ineffective for failing to object to Baker's
      opinion that the girls in the photographs discussed above were under the age of 16
19    because Baker was not an expert on identifying age and because an expert opinion
      was not needed. We disagree because Baker's opinion testimony was admissible.
20
21    Under ER 701, a witness not testifying as an expert can offer opinions that are
      rationally based on the witness's perceptions and will be helpful to the trier of fact.
22    A lay witness can only offer opinion testimony that is not based on scientific,
      technical, or other specialized knowledge covered by ER 702. ER 701; *State v.
23    Montgomery*, 163 Wn.2d 577, 591 (2008). It is within the trial court's discretion
      whether to admit lay opinion testimony under ER 701. *See State v. Blake*, 172 Wn.
24    App. 515, 523 (2012). And ER 704 provides if an opinion is otherwise admissible,

1    it is not objectionable for embracing an ultimate issue to be decided by the trier of
2    fact.

3    Determining a person's general age does not require scientific, technical, or other
     specialized knowledge. Baker's opinions were based on his own perceptions. And
4    he testified about his experience raising his own three children and performing
     volunteer work with other children. He stated that he felt comfortable based on that
5    experience estimating the ages of children. As a result, if Gilmore had objected the
     trial court likely would have found that his testimony was helpful to the jury and
6    therefore admissible under ER 701.

7    Accordingly, we hold that Gilmore's defense counsel was not deficient for failing
     to object to Baker's opinions on the age of the people in the pornographic photos.

8    Dkt. 8, Ex. 2 at pp. 14-15; *Gilmore*, 2016 WL 6707588, at \*7 (parallel citations omitted).

9          The state court concluded Petitioner's counsel's actions were not unreasonable because the

10   alleged improper age testimony was permissible under Washington evidentiary rules, but did not

11   address whether counsel's actions prejudiced Petitioner's case. As such, the Court will only

12   determine whether the state court unreasonably applied the first prong of the *Strickland* test and

13   will not address the second prong of the *Strikland* test. *See Strickland*, 466 U.S. at 697 ("[T]here is

14   no reason for a court deciding an ineffective assistance claim to approach the inquiry in the [a

15   particular] order *or even to address both components* of the inquiry if the defendant makes an

16   insufficient showing in one") (emphasis added). "[A] state court's interpretation of state law . . .

17   binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)

18   (citing *Estelle*, 502 U.S. at 67-58). Thus, the Court must adopt the state court's finding that the

19   testimony was permissible.   As such, Petitioner's counsel cannot be said to have been

20   ineffective if he failed to object to testimony that was not, in fact, improper because an objection

21   to proper testimony would have been overruled by the trial court. *See Kimmelman v. Morrison*,

22   477 U.S. 365, 375 (1986) (counsel's failure to raise meritless argument is not ineffective

23   assistance); *see also Tincher v. Sisto*, 2010 WL 1992238, at \*8 (E.D. Cal. May 12, 2010)

24

REPORT AND RECOMMENDATION - 9

(finding "the state appellate court's determination that testimony . . . was properly admitted under state law indicates that . . . [any] objection would also have been meritless," and "an attorney's failure to make a meritless objection . . . does not constitute ineffective assistance of counsel").

Further, there is a strong presumption trial counsels' decisions are sound trial strategy. *Strickland*, 466 U.S. at 690. Here, Petitioner's counsel did not object to the testimony, but he did address the testimony on cross examination. Dkt. 8, Ex. 8 at pp. 499-500. Trial counsel got Detective Baker to admit he did not personally know any of the girls in the pictures, he has not otherwise verified their ages, he was testifying based on his own opinion, and he had never received any special training or expertise on age identification. *Id*. Trial counsel's decision to address the testimony during cross examination, rather than by objection, supports the assertion that his decision was based on sound trial strategy. *See Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013) (failure to object during opening or closing statements, absent an egregious misstatement, does not constitute ineffective assistance of counsel. *Strong v. Guirbina*, 172 Fed. App'x 150, 151 (9th Cir. 2006) (failure to object during prosecutor's closing argument was sound trial strategy and not ineffective assistance of counsel). Therefore, Petitioner has not shown the state court adjudication of Ground 1 was contrary to, or an unreasonable application of, clearly established federal law when it found he did not receive ineffective assistance at trial. Accordingly, the Court recommends the Petition be denied as to Ground 1.

## II.    Admission of Lay Opinion Testimony (Ground 2)

Petitioner argues the trial court abused its discretion when it allowed Detective Baker to testify as to his opinion about the age of the girls in the photos presented at trial.

Habeas relief may be granted "only on the ground that [Petitioner] is in custody in violation of the constitution or laws or treaties of the United States." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). As the Supreme Court has stated "'federal habeas corpus relief does not lie for errors of state law.'" *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76. In addition, this court has "no authority to review alleged violations of a state's evidentiary rules in a federal habeas proceeding." *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998). The sole exception is if the violation was so egregious as to deny Petitioner the fundamentally fair trial guaranteed by due process. *Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999).

Here, Petitioner challenges the trial court's admission of Detective Baker's opinion testimony, an admission that is based on state evidentiary rules. The state court determined the trial court did not abuse its discretion under the state rules when it allowed the opinion testimony to be admitted. Dkt. 8, Ex. 2 at p. 15; *Gilmore*, 2016 WL 6707588, at *7. The state court's interpretation is binding on this Court. *Bradshaw*, 546 U.S. at 76. The state court found the testimony was proper because "a witness not testifying as an expert can offer opinions that are rationally based on the witness' perceptions and will be helpful to the trier of fact," concluding Detective Baker's observations about age fell into that category. Dkt. 8, Ex. 2 at pp. 14-15; *Gilmore*, 2016 WL 6707588, at *7. Further, any damage caused by this testimony was remedied on cross-examination, when Detective Baker admitted he did not know any of the allegedly underage girls, he had not verified their dates of birth, and he had no special training or expertise on age identification. Dkt. 8, Ex. 20 at p. 500. Thus, because any unfair prejudice was mitigated, the trial was not rendered fundamentally unfair. *See Huynh v. Hernandez*, 2007 WL 186307, at *1 (9th Cir.

2007) (finding a trial is not unfair if evidence is presented that mitigates undue prejudice from allegedly improper evidence). Therefore, Petitioner has failed to demonstrate the state court adjudication of Ground 2 was contrary to, or an unreasonable application of, clearly established federal law when it concluded Detective Baker's testimony was not erroneously admitted. Accordingly, the Court recommends the Petition be denied as to Ground 2.

## III.    Sufficiency of the Evidence (Ground 3)

Petitioner argues he was convicted based on insufficient evidence because there was no evidence he had ever actually viewed the depictions of alleged minors the state presented to the jury, and there was insufficient evidence to show the individuals in the depictions were actually minors.

The Constitution forbids the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). When evaluating a claim of insufficiency of the evidence to support a conviction, the reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S.Ct. 2060, 2064 (2012) (quoting *Jackson*, 443 U.S. at 419). The jury is entitled to believe the State's evidence and to disbelieve the defense's evidence. *Wright v. West*, 505 U.S. 277, 296 (1992).

In affirming Petitioner's conviction on appeal, the Washington Court of Appeals stated:

The State charged Gilmore with four counts of viewing depictions of a minor engaged in sexually explicit conduct under RCW 9.68A.075(1). The statute states:

1

2

3

       A person who intentionally views over the internet visual or printed matter depicting a minor engaged in sexually explicit conduct as defined in RCW 9.68A.011(4) (a) through (e) is guilty of viewing depictions of a minor engaged in sexually explicit conduct in the first degree.

4

5

6

RCW 9.68A.075(1). The sexual conduct listed in RCW 9.68A.011(4)(a)-(e) includes sexual intercourse (including genital-genital and oral-genital), penetration of the vagina by any object, and masturbation. A minor is defined as any person under 18 years of age. RCW 9.68A.011(5).

7

. . .

8

9

10

11

12

Here, the State produced evidence that Gilmore searched certain pornographic websites on specific dates, and that when Baker accessed those websites he observed depictions of minors engaged in sexually explicit conduct. Gilmore argues that this evidence is speculative because Keays and Baker did not access these websites until [] several weeks after the State alleged that he accessed them, and that there was no evidence that the same images were on the websites months earlier or that he had viewed them. He also emphasizes that Keays and Baker admitted that there were no images of minors engaged in sexually explicit conduct on Gilmore's computer.

13

14

15

16

17

18

19

20

However, evidence is sufficient for a conviction if a reasonable inference can be drawn from the evidence that the defendant has engaged in the alleged conduct. *See Homan*, 181 Wn.2d at 105-06. Using internet history and search terms, Keays provided expert computer forensic testimony establishing that Gilmore accessed hundreds of pornographic websites. And using that internet history, Baker accessed many of those sites and observed images of minors engaged in sexually explicit conduct. This testimony provided strong circumstantial evidence that Gilmore also viewed images of minors engaged in sexually explicit conduct on those websites. Gilmore is correct that the State did not provide direct evidence that he actually viewed the images that Baker observed several weeks after Gilmore had accessed the websites. But the State did provide circumstantial evidence, which is just as reliable as direct evidence. *Farnsworth*, 185 Wn.2d at 775. This evidence, when viewed in the light most favorable to the State, was sufficient to give rise to an inference that Gilmore viewed depictions of minors engaged in sexually explicit conduct.

21

Accordingly, we hold that the State provided sufficient evidence to convict Gilmore of four counts of viewing depictions of a minor engaged in sexually explicit conduct.

22

Dkt 8, Ex. 2 at pp. 7-9; *Gilmore*, 2016 WL 6707588, at *4.

23

24

REPORT AND RECOMMENDATION - 13

1    Here, the state court did not unreasonably apply clearly established federal law when it

2 concluded the state had produced sufficient evidence for the jury to conclude Petitioner viewed

3 depictions of a minor engaged in sexually explicit conduct and to convict Petitioner of the counts

4 charged under RCW 9.68A.075(1). First, MB, the victim, testified as to her own account of the

5 incident. Dkt. 8, Ex. 18 at 53-118; Ex. 20 at pp. 300-387. MB testified she first told her

6 grandmother about the abuse, and then told her mother. *Id*., Ex. 18 at pp. 55-56. She testified she

7 told them Petitioner had shown her a video called "daddy's little girl giving him a blow job." *Id*.

8 at p. 65; Ex. 20 at p. 28. She stated there were also dozens of pictures involving both adults and

9 children and she saw "parts [of their bodies] that are supposed to be covered." *Id*., Ex. 18 at p.

10 69. Though she did not use anatomically precise terminology, she stated the videos Petitioner

11 had her watch showed "[t]he part that looks like a pickle going into the other person." *Id*., p. 76.

12 She also testified the people in the videos were unclothed, she could see their "private parts," and

13 that the videos showed the private parts "going in each other." *Id*., Ex. 20 at p. 340. MB stated

14 Petitioner showed her these videos on his laptop. *Id*., Ex. 18 at p. 67.

15    MB's mother and grandmother also testified. MB's grandmother stated MB told her

16 about watching the videos. Dkt. 8, Ex. 19 at pp. 215-16. When MB's grandmother told MB's

17 mother, MB's mother tried to access the videos herself. *Id*. at p. 246. When MB helped her by

18 typing "D" and "A" into Bing, a search engine, the search field auto-populated with search

19 results. *Id*. at 247. When MB's mother clicked on one of the auto-populated results, it displayed a

20 "young-looking girl" who was "not wearing any clothes." *Id*. at 248.

21    Detective Jason Keays, a member of the Washington State Patrol High Tech Crime Unit,

22 testified he received Petitioner's computer after local police began an investigation into MB's

23 allegations. Dkt. 8, Ex. 20 at p. 93. He removed Petitioner's hard drive from the computer and

24

REPORT AND RECOMMENDATION - 14

1    used a software program to search through Petitioner's internet history. *Id*. at p. 94-98. He used

2    key words, including "daddy," "daughter," and "incest," to find all instances of when those terms

3    were typed into Petitioner's computer. *Id*. at p. 398-400. Detective Keays testified he was not

4    looking at the content of any webpages in the results; rather, he was compiling a list of all

5    searches made and links accessed with those three key words in them. *Id*. at p. 400-14.

6         Detective Aaron Baker then received the report compiled by Detective Keays. Dkt. 8, Ex.

7    20 at p. 59-60. He stated he took the URLs found on the hard drive and copy and pasted those

8    URLs into his computer in order to investigate the contents of the websites. *Id*. at p. 61.

9    Detective Baker testified he accessed several of the websites on Petitioner's browser history, five

10   of which appeared to involve adult men and girls younger than sixteen, and one of which

11   appeared to involve an adult man and a girl who appeared younger than ten. *Id*. at pp. 464, 466,

12   486, 487, 489, 492. All of the images Detective Baker found were sexually explicit, appeared to

13   include female minors, and all of the images were submitted to the jury. *Id*. Detective Baker

14   estimated the girls' ages based on his own personal experience, and admitted on cross-

15   examination that he was not an expert in identifying age. *Id*. at p. 500. He also admitted, though

16   Petitioner's account was used to access the above described images, there was no way to tell

17   whether it was actually Petitioner who accessed the images, or somebody else using his account.

18   *Id*. at 502.

19        The state court found, with the evidence in the light most favorable to the prosecution, a

20   rational trier of fact could conclude Petitioner was guilty of viewing depictions of a minor

21   engaged in sexually explicit conduct. The Court agrees. The state charged Petitioner pursuant to

22   RCW 9.68A.075(1), which states in pertinent part: "A person who intentionally views over the

23   internet visual or printed matter depicting a minor engaged in sexually explicit conduct . . . is

24

1    guilty of viewing depictions of a minor engaged in sexually explicit conduct in the first degree."

2    To establish proof that Petitioner had purposefully watched depictions of minor engaging in

3    sexually explicit conduct, the state called MB, who testified Petitioner watched sexually explicit

4    videos with her. The state court noted Detective Keays provided expert forensic testimony that

5    Petitioner accessed numerous sexually explicit websites from his computer. It also noted

6    Detective Baker visited some of those sites and viewed what he believed were minor girls

7    engaging in sexually explicit conduct.

8        The state court concluded the numerous URLs found on Petitioner's hard drive, the

9    nature of the websites investigated by Detective Baker, and MB's testimony produced strong

10   circumstantial evidence to suggest Petitioner accessed images and videos of minors engaging in

11   sexually explicit conduct. Juries have broad discretion in deciding what inferences to draw from

12   the evidence presented at trial, and are only restrained in that they must make "reasonable"

13   inferences. *Coleman*, 132 S. Ct. at 2064. Here, MB's testimony, the numerous URLs found on

14   Petitioner's computer, and the images Detective Baker introduced at trial, coupled with his

15   testimony about the images, was sufficient for a rational trier of fact to conclude Petitioner had

16   viewed depictions of minors engaged in sexually explicit conduct. Therefore, the Petitioner has

17   failed to demonstrate the state court adjudication of Ground 3 was contrary to, or an unreasonable

18   application of, clearly established federal law when it concluded the state had produced sufficient

19   evidence for a reasonable jury to convict Petitioner. Accordingly, the Court recommends the

20   Petition be denied as to Ground 3.

21                    CERTIFICATE OF APPEALABILITY

22       A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

23   court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

24

1  (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability

2  may issue . . . only if the [petitioner] has made a substantial showing of the denial of a

3  constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating

4  that jurists of reason could disagree with the district court's resolution of his constitutional

5  claims or that jurists could conclude the issues presented are adequate to deserve encouragement

6  to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*,

7  529 U.S. 473, 484 (2000)). No jurist of reason could disagree with this Court's evaluation of

8  Petitioner's claims or would conclude the issues presented in the Petition should proceed further.

9  Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with respect

10 to this Petition.

11                              <u>CONCLUSION</u>

12         For the reasons set forth above, the Court recommends Petitioner's Petition be denied as

13 to all grounds.

14         Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

15 fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

16 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

17 review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

18 imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

19 November 16, 2018, as noted in the caption.

20         Dated this 1st day of November, 2018.

21

22                                        David W. Christel
                                          United States Magistrate Judge
23

24